**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES M. HARMAN,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 18-00078-B** |
| | * | |
| **NANCY BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

Plaintiff James M. Harman (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 22, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 21). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

# I.  **Procedural History**[1]

Plaintiff filed his application for benefits on December 23, 2014, alleging disability beginning July 24, 2012, based on asthma, anxiety, supraventricular tachycardia, shoulder restrictions, blood clot, osteoarthritis in the back, scoliosis, blood pressure, learning problems, and illiteracy. (Doc. 12 at 216).  Plaintiff's application was denied and, upon timely request, he was granted an administrative hearing before Administrative Law Judge Warren L. Hammond, Jr. (hereinafter "ALJ") on January 6, 2017.  (Id. at 45, 92).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims.  (Id. at 48-63).  A vocational expert (hereinafter "VE") also appeared at the hearing and provided testimony.  (Id. at 63-66).  On April 21, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 11).  The Appeals Council denied Plaintiff's request for review on January 4, 2018.  (Id. at 5).  Therefore, the ALJ's decision dated April 21, 2017, became the final decision of the Commissioner.  (Id.).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on November 27, 2018 (Doc. 27), and the parties agree

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether the ALJ reversibly erred by finding Plaintiff's supraventricular tachycardia, degenerative disc disease, and asthma to be non-severe impairments?**

2. **Whether substantial evidence supports the ALJ's Residual Functional Capacity determination?**

3. **Whether the ALJ reversibly erred at step five of the sequential evaluation process by failing to ask for or identify Dictionary of Occupational Titles (DOT) codes for the jobs that he found Plaintiff could perform?**

## III. Factual Background

Plaintiff was born on January 30, 1978, and was thirty-eight years of age at the time of his administrative hearing on January 6, 2017. (Doc. 12 at 68). Plaintiff reached, but did not complete, the ninth grade in school. (Id. at 49). At his administrative hearing, Plaintiff reported that he can "hardly read or write." (Id. at 52). Plaintiff worked as a construction worker or laborer from 1997 until 2012. (Id. at 217). According to Plaintiff, he injured his right shoulder while raking asphalt during his most recent employment as a public service worker for Mobile County and has not worked since his injury. (Id. at 51, 346).

At his hearing, Plaintiff testified he can no longer work because he is basically illiterate and because of back problems,

shoulder pain, difficulty breathing, and anxiety. (Id. at 52, 54). Plaintiff's right shoulder was treated with medication, physical therapy, injections, and surgically. (Id. at 287, 299, 302, 331). His heart issues were treated surgically and with medication and monitored by an implantable event monitor and Holter monitor, while his asthma was treated with medication. (Id. at 351, 423, 441, 443, 446, 454). Plaintiff was prescribed medications for his back, such as Naproxen, Zanaflex and Norco. (Id. at 487, 496). Plaintiff was prescribed Valium and Celexa for anxiety in 2012, but he stopped taking anxiety medication in 2013 and has not sought mental health treatment or taken any medications for anxiety since that time. (Id. at 22, 348, 402-03, 407).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.   Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his or her disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she is not engaged in substantial gainful activity. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam). The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. Id. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. Id. If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four. Id. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work. Carpenter, 614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.

1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  The ALJ's Findings**

In the case *sub judice*, the ALJ found that Plaintiff has the severe impairment of right shoulder disorder. (Doc. 12 at 16). The ALJ also found that Plaintiff's supraventricular tachycardia status post-ablation, degenerative disc disease, and asthma, when considered individually and in combination, do not cause more than a minimal limitation in the ability to perform basic work activity and, thus, are non-severe impairments. (Id.). The ALJ further found that Plaintiff's impairments, when considered individually and in combination, did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Id. at 23-24). The ALJ determined that Plaintiff has the RFC to perform a range of light work with the following additional limitations: occasional postural restrictions with respect to climbing ramps, stairs, ladders, ropes, and scaffolds, balancing, stooping, kneeling, crouching, and crawling; occasional manipulative restrictions with respect to reaching

overhead; environmental restrictions including avoiding hazards, dangerous machinery, and heights; and illiteracy. (Id. at 24). The ALJ concluded that Plaintiff is not able to perform his past relevant work as a construction laborer. (Id. at 28). Utilizing the testimony of the VE, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as ironer, mill stenciler, and blending tank tender. (Id. at 28-29). Thus, the ALJ found that Plaintiff is not disabled. (Id. at 29).

## VII. Discussion

### A. The ALJ's finding, at step two, that Plaintiff's supraventricular tachycardia, degenerative disc disease, and asthma were non-severe impairments is not reversible error.

In his brief, Plaintiff argues that the ALJ reversibly erred in finding that his supraventricular tachycardia ("SVT"),[3] degenerative disc disease, and asthma were non-severe impairments. (Doc. 13 at 2-8). The Commissioner counters that Plaintiff's argument is irrelevant and moot, as the ALJ found that Plaintiff had a severe impairment and accordingly proceeded with the disability evaluation, thereby rendering the finding that other

---

[3] Supraventricular tachycardia is a series of rapid heartbeats that begin in or involve the upper chambers (atria) of the heart. SVT can cause the heart to beat very rapidly or erratically. See https://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/supraventricular_tachycardia.html.

impairments were non-severe immaterial. (Doc. 18 at 4-6). Having carefully reviewed the record, the Court finds that, assuming *arguendo* that the ALJ erred in finding some of Plaintiff's impairments not to be severe, any such error was harmless.

For an impairment to be severe, it must be more than "a slight abnormality or a combination of slight abnormalities that causes no more than *minimal* functional limitations[.]" 20 C.F.R. § 416.924(c) (emphasis added). Indeed, it must "*significantly* limit[]" an individual's "ability to do *basic work activities*[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c) (emphasis added). "[I]t is [the] Plaintiff's burden to prove the existence of a severe impairment and she must do that by showing an impact on her ability to work." Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, at *13-14, 2013 WL 3901655, at *5 (M.D. Fla. July 29, 2013) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)); McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.").

> At step two the ALJ must determine if the
> claimant has any severe impairment.  This step
> acts as a filter; if no severe impairment is
> shown the claim is denied, but the finding of
> any severe impairment, whether or not it
> qualifies as a disability and whether or not
> it results from a single severe impairment or
> a combination of impairments that together
> qualify as severe, is enough to satisfy the
> requirement of step two.

Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  See also

Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951 (11th

Cir. 2014)[4] (per curiam) ("[W]e have recognized that step two

requires only a finding of 'at least one' severe impairment to

continue on to the later steps. . . . [T]he regulations state that

the only consequence of the analysis at step two is that, if the

ALJ finds no severe impairment or impairments, he should reach a

conclusion of no disability. . . . Here, the ALJ found multiple

severe impairments and accordingly proceeded to step three of the

evaluation.  Based on our precedent and the regulations, therefore,

it is apparent that there is no need for an ALJ to identify every

severe impairment at step two.  Accordingly, even assuming that

Tuggerson-Brown is correct that her additional impairments were

'severe,' the ALJ's recognition of that as a fact would not, in

---

[4] Federal Appendix cases are unpublished Eleventh Circuit opinions
and are not considered binding precedent, but they may be cited as
persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc.
Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases
printed in the Federal Appendix are cited as persuasive
authority.").

any way, have changed the step-two analysis, and she cannot demonstrate error below."); Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951, at *14, 2013 WL 4433764, at *5 (N.D. Ala. Aug. 16, 2013) ("[T]he Eleventh Circuit has determined that '[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, at *25, 2012 WL 4738857, at *9 (N.D. Ala. Sept. 27, 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of *all* the claimant's impairments.") (emphasis in original).

In this case, the ALJ found at step two of the evaluation process that Plaintiff had the severe impairment of right shoulder disorder. (Doc. 12 at 16). Thereafter, the ALJ determined that Plaintiff's SVT, degenerative disc disease, and asthma were not severe impairments. (Id.). After doing so, the ALJ provided a detailed summary of the evidence relating to each alleged impairment and explained his reasons for finding Plaintiff's SVT,

11

degenerative disc disease, and asthma to be non-severe impairments. (See id. at 16-23). The ALJ then proceeded with the subsequent steps of the evaluation process and rendered an RFC finding based on the record as a whole, expressly noting that he limited Plaintiff to light exertional work to fully accommodate Plaintiff's severe and non-severe impairments. (See id. at 27). Accordingly, since the ALJ determined that Plaintiff suffered from a severe impairment at step two and then proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless and provides no basis for remand. See Gray v. Comm'r of Soc. Sec., 550 F. App'x 850, 853-54 (11th Cir. 2013) (per curiam); Packer v. Comm'r, Soc. Sec. Admin., 542 F. App'x 890, 892 (11th Cir. 2013) (per curiam); Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (per curiam).

> **B.  The Residual Functional Capacity for a range of light work with the stated restrictions is not supported by substantial evidence.**

Next, Plaintiff argues that the ALJ's RFC for a range of light work is not supported by substantial evidence because the ALJ did not adequately account for Plaintiff's shoulder impairment and did specify any reasons for not including in the RFC all of the functional limitations given by Plaintiff's treating orthopedist, Dr. Joseph McGowin. (Doc. 13 at 8-10). Having reviewed the record

at length, the Court finds that the RFC is not supported by substantial evidence because it omits a restriction on overhead lifting (on Plaintiff's right side), although the record clearly establishes such a restriction.

RFC is a measure of what a claimant can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, at *9-10, 2012 WL 997222, at *3-4 (M.D. Ala. Mar. 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985) (per curiam). Plaintiff has met his burden in this case.

The record shows that Plaintiff reported feeling a sudden sharp pain in the right anterior shoulder while at work raking asphalt on November 29, 2010. (Doc. 12 at 295, 346). Plaintiff was initially seen by Dr. John McMillin, who diagnosed an upper arm strain and recommended treatment with over-the-counter medication, Biofreeze and physical therapy. (Id. at 293-95). An

x-ray of Plaintiff's right shoulder/humerus taken on November 29, 2010 was negative. (Id. at 295). A right shoulder MRI performed on January 10, 2011, revealed findings consistent with tendinopathy of the supraspinatus tendon. (Id. at 289). On January 11, 2011, after reviewing the MRI results, Dr. McMillin diagnosed Plaintiff with rotator cuff syndrome and referred him to an orthopedist for further treatment. (Id. at 290).

The next day, Plaintiff presented to Dr. Joseph McGowin for orthopedic treatment. (Id. at 346). Following a physical examination, Dr. McGowin injected Plaintiff's subacromial bursa and started him on a home rotator cuff exercise program and Mobic. (Id.). Dr. McGowin performed a right shoulder arthroscopy on April 4, 2011. (Id. at 342). The arthroscopy showed some findings of Grade 2 posterior laxity, no inferior or anterior laxity, and an anterior acromial spur with no obvious labral pathology or rotator cuff pathology. (Id.). The anterior acromial spur was removed without release of a significant portion of the coracoacromial ligament. (Id.).

On May 17, 2011, Dr. McGowin noted that Plaintiff's physical therapy report showed improvements, but that Plaintiff still had a little limited internal rotation and occasional discomfort. (Id. at 338). Dr. McGowin continued Plaintiff on Mobic and prescribed three weeks of work hardening. (Id.). Plaintiff initially showed good progress, and Dr. McGowin released him to return to regular

duty work on June 13, 2011. (Id. at 337). Three months later, Plaintiff returned to Dr. McGowin complaining of right shoulder pain, and a physical exam produced a positive Sulcus test, positive apprehension, and positive relocation. (Id. at 336). On November 14, 2011, Dr. McGowin performed an arthroscopic Bankart repair of Plaintiff's right shoulder, with the arthroscopy showing findings of capsular redundancy and insufficient anterior inferior labrum with instability. (Id. at 335). After the surgery, Plaintiff underwent physical therapy and experienced some improvement in motion, particularly forward flexion, but he had a mild restriction of abduction, and his internal rotation remained significantly restricted. (Id. at 329).

Dr. McGowin ordered a functional capacity examination ("FCE"), which he reviewed with Plaintiff on April 18, 2012. (Id. at 328-29). The FCE showed significant limitations of activities, pushing, pulling, gripping, and particularly work above shoulder level. (Id. at 328). Dr. McGowin opined that Plaintiff could engage in work at the medium duty level, and that he had the following permanent work restrictions: no lifting of more than forty pounds to waist level, no repeated work above shoulder level, and no lifting greater than five pounds above shoulder level. (Id.). Dr. McGowin concluded that Plaintiff was at maximum medical improvement and assigned him a partial permanent impairment rating of twenty percent of the upper extremity, with twelve percent of

the whole man for his right shoulder.  (Id.).

After the conclusion of Plaintiff's treatment by Dr. McGowin, Plaintiff's treatment records reflect no specific complaints pertaining to his right shoulder; however, he was prescribed pain medication on some visits to his primary care provider.[5]  (Id. at 487, 490, 496).  And, his primary care provider referred him to Dr. Tim Revels for complaints of low back pain.  (Id. at 673).  Plaintiff was seen by Dr. Revels on June 10, 2015.  (Id.).  Dr. Revels' physical examination of Plaintiff's upper extremities revealed no tenderness, swelling, deformities, instability, weakness, or atrophy, normal muscle tone and bulk, and full and painless range of motion of all joints tested in all planes.  (Id. at 675).

Plaintiff presented for a consultative examination with Dr. Brian Wood on September 17, 2016, where Plaintiff reported right shoulder pain.  (Id. at 716).  Upon a physical examination, Plaintiff had weakness in the right proximal arm on a scale of 3/5 and pain with shoulder abduction to eighty degrees and with internal rotation.  (Id. at 719-20).  Plaintiff had normal

_____

[5] On January 17, 2014, Plaintiff presented to his primary care physician with a complaint of *left* shoulder pain brought on when his dog yanked on its leash.  (Doc. 12 at 488).  Within two weeks, the pain had improved greatly after he was given a Toradol shot and prescribed muscle relaxant and pain medication.  (Id. at 490-91).

reflexes, intact sensation, intact cranial nerves, no muscular atrophy, and no cerebellar abnormalities. (Id. at 720). He also had a reduced range of motion in both shoulders, more so on the right. (Id.). Dr. Wood noted that Plaintiff's physical examination findings were suggestive of tendinopathy or unhealed rotator cuff tear and that symptoms were likely to improve with surgical or medical management. (Id.). Dr. Wood opined that Plaintiff can lift and carry five to ten pounds on an occasional basis on the right side and has a limited ability to reach, handle, or grasp on the right side. (Id. at 721). Dr. Wood found no limitations with respect to Plaintiff's left shoulder. (See id.).

Plaintiff argues that the ALJ did not adequately account for his shoulder impairment, in particular his overhead lifting restriction, in the RFC. As noted *supra,* the ALJ found that Plaintiff has a right shoulder disorder, and to accommodate said disorder, the ALJ limited Plaintiff to light work with occasional overhead reaching and no exposure to hazards, dangerous machinery, or heights. (Id. at 16, 24, 26). The ALJ noted that the limitations were supported by Dr. Wood's findings and consistent with the orthopedic treatment records, which noted some ongoing problems in these areas on clinical exams after Plaintiff's surgery. (Id. at 26). The ALJ also noted that Plaintiff reported in his function report that he can lift forty pounds to the waist, not much over his head, and that he cannot reach "too high" and

cannot complete some tasks because of shoulder pain. (Id.). According to the ALJ, Plaintiff's allegations were accounted for in the RFC. (Id.).

Based upon the record before the Court, the undersigned finds that while the ALJ's decision includes a detailed summary of Plaintiff's medical evidence, recognition that Plaintiff's right shoulder disorder is documented in the medical records, and an RFC that limits Plaintiff to occasional overhead reaching, the ALJ erred in not including any overhead lifting restrictions. Based on his treatment of Plaintiff and the FCE findings, Dr. McGowin opined that Plaintiff was particularly restricted in above-shoulder work and that Plaintiff should not lift greater than five pounds above the shoulder level. (Id. at 328). Similarly, Dr. Wood opined that Plaintiff could only lift and carry five to ten pounds occasionally on his right side.[6] (Id. at 721). The ALJ gave Dr. McGowin's opinions partial weight and noted that he was limiting Plaintiff to light exertional work "to fully accommodate" his residual right shoulder disorder. (Id. at 27). The ALJ restricted Plaintiff to occasional overhead reaching but did not include any overhead lifting restriction. (Id. at 24).

---

[6] The ALJ gave Dr. Wood's opinions partial weight due to inconsistencies between his narrative report and the information in the MSS form. (Doc. 12 at 27).

The undersigned finds that the lack of an overhead lifting restriction (on Plaintiff's right side) is inconsistent with the substantial medical evidence, including the FCE findings, the medical opinions of Dr. McGowin and Dr. Wood, and with Plaintiff's testimony regarding his difficulties with overhead lifting. Plus, it was inconsistent for the ALJ to find that Plaintiff's right shoulder disorder limits him to occasional overhead reaching but imposes no limitations on his ability to perform overhead lifting, particularly on the right side. Because of said error, this case is remanded to the ALJ to re-evaluate Plaintiff's RFC, determine whether Plaintiff's right shoulder disorder imposes an overhead lifting restriction, and, if so, determine whether there are jobs in the national economy that Plaintiff can perform in view of such restriction.

> **C.** **The ALJ erred at step five of the sequential evaluation process by failing to ask for, identify, and resolve apparent conflicts between the VE's testimony and the DOT.**

Plaintiff next argues that the ALJ erred at step five of the sequential evaluation process by relying solely on testimony from the VE regarding other jobs that exist in significant numbers in the national economy that Plaintiff is able to perform, without asking for or identifying corresponding Dictionary of Occupational Titles ("DOT") codes for the jobs the ALJ found Plaintiff could perform. (Doc. 13 at 10). Plaintiff points out that the ALJ did

not ask for or provide corresponding DOT codes for the occupations of ironer, mill stenciler, and blending tank tender, and he maintains that without knowing the codes, the DOT requirements for the given jobs cannot be determined. (Id.). The Commissioner counters that the VE's testimony constituted substantial evidence to support the ALJ's findings because the occupations identified by the VE are easily correlated to the DOT and that, even if the VE's testimony was inconsistent with the DOT, the VE's testimony trumps the DOT. (Doc. 18 at 8). The Court has reviewed the record at length and finds that this matter must be remanded for further consideration.

At the administrative hearing, the VE testified that, considering an individual of Plaintiff's age, education, and work experience, with all the limitations contained in the RFC (as set forth above), there are jobs existing in the national economy that such an individual could perform, in numbers the ALJ found to be significant. (See Doc. 12 at 28, 65). In response to the ALJ's hypothetical, the VE identified the following jobs that Plaintiff could perform given the stated limitations: ironer, mill stenciler, and blending tank tender, all of which the VE testified were light exertion and unskilled. (Id. at 65). The VE did not provide DOT codes that corresponded to the identified occupations. (See id.). The VE did not state, and the ALJ did not ask, whether her testimony was consistent with the DOT. (Id.). On cross-

examination, Plaintiff's attorney presented the VE with additional hypotheticals but did not ask or attempt to ask any questions regarding DOT codes or potential conflicts between the VE's testimony and DOT. (See id. at 65-66). However, in his decision, the ALJ stated that he had determined that the VE's testimony was consistent with the DOT. (Id. at 29).

Social Security Ruling 00-4p ("SSR 00-4p") "is designed to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational expert and information in the DOT." Davis v. Astrue, 2012 U.S. Dist. LEXIS 176929, at *17, 2012 WL 6213124, at *7 (M.D. Fla. Dec. 13, 2012). Under SSR 00-4p, an ALJ "must: [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 SSR LEXIS 8, at *1, 2000 WL 1898704, at *1. The Ruling further states that when a VE provides evidence about the requirements of a job or occupation, the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 SSR LEXIS 8, at *9, 2000 WL 1898704, at *4. Beyond this general duty to ask about possible conflicts, if evidence from a VE "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for

the apparent conflict."[7]  Id.  Further, "[w]hen an ALJ identifies an apparent conflict that was not raised during a hearing, [the ALJ] can request an explanation of the conflict by submitting interrogatories to the vocational expert."  Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1363 (11th Cir. 2018) (citation and internal quotation marks omitted).  "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them."  Id.

Under SSR 00-4p, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p, 2000 SSR LEXIS 8, at *5, 2000 WL 1898704, at *2.  Rather, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information."  Id.

"SSR 00-4p imposes an independent, affirmative obligation on the part of the ALJ to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the VE if there is one."  Washington, 906 F.3d at 1364.  Pursuant to SSR 00-4p, the ALJ has an affirmative duty "to identify apparent conflicts,

---

[7] In this context, the term "apparent conflict" is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT.  Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion."  Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1366 (11th Cir. 2018).

ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision." Id. at 1365. In Washington, the Eleventh Circuit made clear that, because the Ruling implicates the substantive rights of benefits applicants, "we will require the agency to follow the procedure laid out in SSR 00-4p." Id. at 1361.

In the case at bar, the ALJ did not ask the VE during her brief testimony whether her testimony was consistent with the DOT or whether any of the identified occupations corresponded to a DOT code. In response to the ALJ's hypothetical, the VE identified three occupations. For each occupation she identified, the VE testified that each was "light exertion" with an "SVP of 2,"[8] and she provided the national employment figures for the position. (See Doc. 12 at 65). Although there was no mention of the DOT at the administrative hearing, the ALJ stated in his decision that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Id. at 29).

The Commissioner argues that Plaintiff has not identified any conflicts between the VE's testimony and the DOT, and that the VE's identified occupations are easily correlated to the DOT.

---

[8] The DOT "lists Specific Vocational Preparation (SVP) in terms of the time necessary for a typical worker to learn the job." Hanley v. Astrue, 2008 WL 2557496, at *3 (N.D. Fla. June 20, 2008).

(Doc. 18 at 8). In support of this assertion, the Commissioner cites DOT codes for the occupations of ironer, mill stenciler, and blending tank tender. (Id.). The Court notes that the DOT codes cited by the Commissioner for the occupations of ironer (302.687-010) and mill stenciler (659.685-026) are light work positions with SVP levels of two. However, the Commissioner's DOT citation for the position of blending tank tender (520.685-030) requires heavy exertion of fifty to one-hundred pounds of force frequently and is patently inconsistent with the VE's testimony that the job is light exertion.

Based on the foregoing, the ALJ erred, first when he failed to ask the VE whether her testimony conflicted with the DOT, and second when he failed to identify or ask about the apparent conflict between the VE's testimony and the DOT listing for the occupation of blending tank tender and failed to resolve that apparent conflict. Moreover, the Court cannot say the ALJ's error was a harmless one. The VE did not provide DOT codes for the three given occupations, the ALJ did not ask the VE about apparent conflicts, and on review, the Court has no reasonable basis to conclude that the ALJ adequately resolved the above-referenced conflict.

The Commissioner next argues that, even if the testimony given by the VE did conflict with the DOT, the ALJ did not err when he relied on the VE's testimony because "in the Eleventh Circuit, the

VE's testimony trumps the information in the DOT . . . ." (Doc. 18 at 8). While this argument may have had merit at the time the Commissioner's brief was drafted, see Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 938 (11th Cir. 2011) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)), the Eleventh Circuit has since made clear that it will require the Social Security Administration to follow SSR 00-4p, which provides that neither the DOT nor the VE evidence automatically trumps when there is a conflict and directs ALJs to ask about, identify, explain, and resolve any conflicts between the VE's testimony and the DOT. See Washington, 906 F.3d at 1361. Because the ALJ did not perform the required analysis under SSR 00-4p, the ALJ's findings at step five and his disability determination are not based on substantial evidence. See id. at 1356 ("The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence."); Brooks v. Berryhill, 2017 U.S. Dist. LEXIS 160679, at *9, 2017 WL 4366725, at *4 (M.D. Ala. Sept. 29, 2017) ("Thus, the ALJ's step four findings and disability determination are not based on substantial evidence and proper legal standards were not employed."). Accordingly, the Court must remand this matter for additional administrative proceedings consistent with the requirements of SSR 00-4p.

## VIII. <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **REVERSED** and **REMANDED**.

**DONE** this **28th** day of **March, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**